2018 IL App (1st) 161267

No. 1-16-1267

Opinion filed December 27, 2018

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 5697 |
| JASPER LAWRENCE, | ) ) | The Honorable Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        After a jury trial, defendant Jasper Lawrence was convicted of unlawful possession of a weapon by a felon and sentenced to seven years with the Illinois Department of Corrections (IDOC).

¶ 2        On this appeal, defendant claims, first, that the trial court erred in denying his motion to suppress the gun seized from him because police officers arrested him without probable cause. Second, he claims that the trial court coerced a guilty verdict by telling the jurors to continue to deliberate after the jurors sent out a note indicating that they were deadlocked.

Third, defendant asks this court to vacate his sentence and remand for resentencing because the trial court either relied on an incorrect sentencing range or impermissibly enhanced his sentence by using an element of the offense also as an aggravating factor.

¶ 3     For the following reasons, we do not find these claims persuasive and affirm his conviction and sentence.

¶ 4                                    BACKGROUND

¶ 5     Before trial, defendant moved to quash his arrest and suppress the gun seized from him, claiming that, while the traffic stop of the vehicle (in which he was a passenger) was a valid stop when the stop began, the stop exceeded its permissible scope and, thus, resulted in his illegal arrest.

¶ 6     At the subsequent suppression hearing held on August 31, 2015, police officer Gregory Klimaszewski testified that he and his partner, Officer Lawrence Willems, personally observed a vehicle commit a traffic violation. Specifically, at 11:30 p.m. on March 25, 2015, they observed a silver Buick that failed to stop at a red light before making a right turn. After Officer Willems activated the police vehicle's lights and siren, the driver of the Buick complied and pulled over. The vehicle held two occupants: (1) the driver and (2) defendant, who was in the front passenger seat. Officer Willhems approached the driver's side on foot, while Officer Klimaszewski approached the passenger side of the vehicle. The area was well lit with streetlights, Observing that the Buick's windows were rolled up, Officer Klimaszewski shined his flashlight into the vehicle and observed that defendant was "moving around" with a handgun sticking out of the front pocket of his hooded sweatshirt. Officer Klimaszewski testified that he was able to observe "[a]lmost the entire gun," including "the grip, the back handle" and "most of the [gun's] barrel." At the hearing, he

described the gun as a small chrome-colored, .25-caliber semiautomatic pistol. Officer Klimaszewski could not recall if the Buick's windows were tinted, but he testified that the silver color of the gun contrasted with the black color of defendant's sweatshirt and that he could observe the gun while standing a foot away from the vehicle.

¶ 7      Officer Klimaszewski testified that he informed his partner that he had observed a gun, he withdrew his own gun and directed defendant to exit the vehicle, and defendant complied. After defendant exited, Officer Klimaszewski took possession of the handgun and placed defendant under arrest.

¶ 8      During the argument on the suppression motion, defense counsel argued primarily that the window was rolled up and tinted, and thus, the officer's testimony was unbelievable. The trial court did not find this argument persuasive, observing that the court had before it only the uncontroverted testimony of the officer about what he observed. Thus, it denied the motion.

¶ 9      On December 14, 2015, defendant moved to reconsider on the ground that the officers lacked probable cause to arrest defendant, since possessing a firearm is not, by itself, a crime. The trial court permitted defendant to reopen testimony, and on January 25, 2016, the suppression hearing resumed.

¶ 10      Officer Klimaszewski testified that, as he took possession of the gun from defendant, defendant stated, "it's a lighter, not a handgun." Officer Klimaszewski then handed the gun to his partner, Officer Willems, who determined that the gun was loaded. Officer Klimaszewski then handcuffed defendant and placed him in the back of a police vehicle. Other officers drove defendant to the police station, which was "[a]bout eight blocks" from where the initial stop occurred. When Officer Klimaszewski arrived at the police station, he

learned that defendant (1) lacked a firearm owner's identification (FOID) card, (2) lacked a concealed carry permit, and (3) had a prior felony conviction. However, Officer Klimaszewski did not know these facts when he arrested defendant.

¶ 11    After listening again to argument on the suppression motion, the trial court denied the motion, finding that

"it would be unreasonable *** to require that before moving further, [the officers] needed to keep the [d]efendant on the scene until they looked into the fact that he didn't have a Concealed Carry or a FOID, based on the untruth told to the police, the lie that it was not, in fact, a lighter."

Thus, the trial court found that it was reasonable for the officers to "take [defendant] eight blocks away to do a further investigation."

¶ 12    Prior to the start of trial, the trial court informed defendant that he was charged with a Class 2 felony and that the sentencing range for that charge was three to seven years. The trial court further informed defendant that, the State "could ask, if [defendant was] convicted, for an extended term of 7 to 14 years, [and] fines up to $25,000." The trial court then asked defendant: "You understand that's a range that you'd be facing, that's 3 to 14 years if you're convicted? Yes." Although the record does not indicate defendant's response, the trial court immediately stated "[a]ll right," thereby indicating that defendant had indicated he understood. The court then confirmed that defense counsel had communicated the State's plea offer and that defendant chose to reject it. The trial court asked if that was correct, and defendant responded "[y]es, ma'am." The trial court then found "that the Defendant, Mr. Lawrence, understands the penalties that he faces."

¶ 13    At trial, Officer Klimaszewski testified substantially the same as he had during the pretrial suppression hearing, and his partner, Officer Willems, substantially corroborated him, testifying that he also heard defendant state that it was not a gun, but a lighter. After being qualified as an expert in firearm examination, Sergeant Kenneth Krok testified that he examined the gun, and found that it was a fully operational .25-caliber pistol and definitely "not a lighter."

¶ 14    The parties stipulated that, at the time of the offense, defendant had a prior qualifying conviction, and the State rested. Defendant moved for a directed verdict, which the trial court denied.

¶ 15    Defendant testified that he was a passenger in the Buick on March 25, 2015, but that neither he nor the driver had a gun. Defendant testified that the police officers stated that they pulled the vehicle over because it had tinted windows, that the vehicle did, in fact, have tinted windows, and that a person could not see through the windows at night from outside the vehicle. Defendant admitted that he was wearing a black sweatshirt with a large front pocket, that a silver gun would contrast with a black sweatshirt, that he was a convicted felon, and that he knew he could not legally possess a gun.

¶ 16    In rebuttal, the State called Officer Daniel Vasquez, who was patrolling the same area with his partner, Officer Doherty. Officer Vasquez testified that they observed the traffic violation and pulled over to assist. Officer Vasquez testified that he overheard Officer Klimaszewski yell "gun" and also overheard defendant state "it was not a gun, it was a lighter."

¶ 17    After hearing closing arguments and jury instructions, the jury began deliberating at 10:30 a.m. on January 27, 2016. At 1:30 p.m., the jury sent out a note with two questions.

The first question asked: "We are at 9 guilty 3 not guilty. What next?" The second question asked: "Can we get the testimony of Officer Klimaszewski and Officer Willems?"

¶ 18    The trial court discussed the note with the attorneys from both sides and informed them that, with respect to the first question, it was going to answer, "Please continue to deliberate." Defense counsel agreed, stating, "Right." Then defense counsel asked the trial court to inform the jury that "we cannot get the transcripts today." Summing up the court's contemplated response, the trial court stated that it "will answer as to jurors regarding question number one, please continue to deliberate. Regarding question number two, the attorneys have checked and the transcripts are unavailable." Defense counsel then asked the trial court to inform the jurors specifically that the transcripts are unavailable "today." The trial court agreed, stating that it "will say that they are unavailable today."

¶ 19    A half hour later, at 2 p.m., the jury returned a verdict finding defendant guilty of unlawful possession of a weapon by a felon. On February 24, 2016, and on April 12, 2016, defendant filed a posttrial motion and a supplemental motion for a new trial that were subsequently denied. The supplemental motion claimed, among other things, that the trial court erred in denying defendant's motion to suppress evidence and quash arrest.

¶ 20    At the sentencing hearing on April 13, 2016, defendant's mother testified that defendant was a loving and hard-working son and father. The prosecutor then stated, without objection, that the applicable sentencing range was 3 to 14 years. The prosecutor first reviewed defendant's criminal history, but then observed that defendant was not in a gang, had no gang contacts, had a "good family" and "positive role models," and "leads a different life than many of the people that come before you in this courtroom."

¶ 21     After considering multiple factors in mitigation and aggravation, the trial court sentenced defendant to seven years with IDOC. Also on April 13, 2016, defendant filed a motion to reconsider his sentence claiming, among other things, that the trial court "improperly considered in aggravation matters that are implicit in the offense" and that the State failed to prove his "eligibility for enhanced penalty or extended term." The trial court denied the motion to reconsider, and defendant filed a timely notice of appeal, also on April 13, 2016. This timely appeal followed.

¶ 22                                    ANALYSIS

¶ 23     On this appeal, defendant claims (1) that the trial court erred in denying his motion to suppress the gun, (2) that the trial court coerced a guilty verdict by telling the jurors to continue to deliberate, and (3) that, in the alternative, his sentence must be vacated and his case remanded for resentencing because the trial court improperly used an element of the offense, namely, his prior felony conviction, as an aggravating factor.

¶ 24     For the following reasons, we do not find these claims persuasive and affirm his conviction and sentence.

¶ 25                              I. Suppression Motion

¶ 26     First, defendant claims that police officers arrested him without probable cause, and thus, the trial court erred by failing to grant his motion to quash his arrest and suppress the gun seized from him.

¶ 27                                    A. Standard of Review

¶ 28        A trial court's ruling on a defendant's motion to suppress evidence and quash arrest usually involves questions of both fact and law. *People v. Williams*, 2016 IL App (1st) 132615, ¶ 32; *People v. McCarty*, 223 Ill. 2d 109 (2006).

¶ 29        A trial court's factual findings are given great deference and will not be disturbed on review unless they are against the manifest weight of the evidence. *People v. Holmes*; 2017 IL 120407, ¶ 9; *Williams*, 2016 IL App (1st) 132615, ¶ 32; *People v. Close*, 238 Ill. 2d 497, 504 (2010). At a hearing on a motion to suppress evidence and quash arrest, the trial court acts as the fact finder and, as such, is responsible for determining the credibility of the witnesses, drawing reasonable inferences from the testimony and other evidence, and weighing the evidence presented. *Williams*, 2016 IL App (1st) 132615, ¶ 32; *Close*, 238 Ill. 2d at 504.

¶ 30        However, the trial court's ultimate ruling on the motion is a question of law that we review *de novo*. *Holmes*, 2017 IL 120407, ¶ 9; *Williams*, 2016 IL App (1st) 132615, ¶ 32; *Close*, 238 Ill. 2d at 504. Thus, "[a] reviewing court *** [is] free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions." *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 72; see also *People v. Pitman*, 211 Ill. 2d 502, 512 (2004).

¶ 31                                    B. Fourth Amendment

¶ 32        Both the Illinois Constitution and the fourth amendment of the United States Constitution protect citizens from unreasonable searches and seizures by police officers. *Holmes*, 2017 IL 120407, ¶ 25; U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "[T]he 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon

the exercise of discretion by government officials," such as police officers. *People v. Jones*, 215 Ill. 2d 261, 269 (2005).

¶ 33   Encounters between police officers and citizens have been divided by the courts into three tiers: (1) arrests, which must be supported by probably cause; (2) brief investigative detentions, commonly referred to as "*Terry* stops," which must be supported by a police officer's reasonable, articulable suspicion of criminal activity; and (3) consensual encounters that involve no coercion by the police and, thus, do not implicate the fourth amendment. *Williams*, 2016 IL App (1st) 132615, ¶ 34; *Ciborowski*, 2016 IL App (1st) 143352, ¶ 77; see also *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006).

¶ 34   Pursuant to the landmark case of *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may conduct a brief, investigatory detention when he or she has a reasonable suspicion that a person is committing, is about to commit, or has committed a criminal offense. *Williams*, 2016 IL App (1st) 132615, ¶ 44; *Ciborowski*, 2016 IL App (1st) 143352, ¶ 77. The officer's reasonable suspicion must be more than a hunch and must be supported by specific and articulable facts. *Williams*, 2016 IL App (1st) 132615, ¶¶ 44-45. However, it is less than what is required for probable cause. *Williams*, 2016 IL App (1st) 132615, ¶ 44. When reviewing the officer's action, a court will apply an objective standard, rather than a subjective standard. *People v. Colyar*, 2013 IL 111835, ¶ 40. Thus, the question on review is whether the facts known to the officer at the time would lead a reasonably prudent person in the same circumstances to believe that the action was appropriate. *Colyar*, 2013 IL 111835, ¶ 40.

¶ 35   To justify a full custodial arrest, an officer must have probable cause. *Williams*, 2016 IL App (1st) 132615, ¶ 34; *Ciborowski*, 2016 IL App (1st) 143352, ¶ 77. Probable cause exists when the facts and circumstances known to the arresting officer are sufficient to

warrant a reasonable person's belief that the arrested person has committed a crime. *Ciborowski*, 2016 IL App (1st) 143352, ¶ 78; see also *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). Officers are allowed to draw on their own experience and specialized training to make inferences and deductions about the cumulative information available to them. *Ciborowski*, 2016 IL App (1st) 143352, ¶ 78. Upon review, a court will look at the totality of the circumstances known to the arresting officer at the time of the arrest. *Ciborowski*, 2016 IL App (1st) 143352, ¶ 78; *People v. Berry*, 314 Ill. App. 3d 1, 6 (2000).

¶ 36    A probable cause determination does not require the police to possess proof beyond a reasonable doubt. *Berry*, 314 Ill. App. 3d at 6. Police officers "may arrest the defendant if it is more probably true than not that the evidence available to them supports the conclusion that defendant committed the crime." *Berry*, 314 Ill. App. 3d at 6.

¶ 37    In determining whether probable cause existed, "a reviewing court is not limited to the evidence presented at the circuit court's pretrial suppression hearing, but may also consider evidence that was offered at the defendant's trial." *People v. Sims*, 167 Ill. 2d 483, 500 (1995). "Also, this court may affirm a trial court's suppression ruling for any reason appearing in the record, regardless of whether such reason was expressly noted by the trial court in reaching its conclusion." *Sims*, 167 Ill. 2d at 500-01; *People v. Gomez*, 2011 IL App (1st) 092185, ¶ 55 ("[W]e may affirm the trial court's ruling on defendant's motion to suppress for any reason in the record, regardless of whether the trial court relied on this reason as a basis for its conclusion.").

¶ 38    As a general matter, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. *People v. Hackett*, 2012 IL 111781, ¶ 20; *People v. Sorenson*, 196 Ill. 2d 425, 433 (2001) ("The stop of the vehicle in

which the defendant was a passenger was justified based on [the officer's] observation of a traffic violation."). Although traffic stops are frequently supported by probable cause to believe that a traffic violation occurred, reasonable suspicion will suffice for purposes of the fourth amendment, whether or not the stop was supported by probable cause. *Hackett*, 2012 IL 111781, ¶ 20. After observing a traffic violation, the police may seize the vehicle's driver and any passengers for the duration of the traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Once a vehicle has been lawfully detained for a traffic violation, the police officers may order the driver and any passengers out of the vehicle without violating the fourth amendment. *Sorenson*, 196 Ill. 2d at 433; *Johnson*, 555 U.S. at 331. Once outside the stopped vehicle, the driver and passengers may be patted down for weapons if the officer reasonably concludes that they may be armed and presently dangerous. *Johnson*, 555 U.S at 331-32.

¶ 39 After making a lawful stop, a police officer may perform this frisk or protective pat-down search if he or she has a reasonable articulable suspicion that the person stopped is armed and dangerous. *People v. Surles*, 2011 IL App (1st) 100068, ¶ 35. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Sorenson*, 196 Ill. 2d at 433.

¶ 40 In the case at bar, the officers had probable cause to believe that a traffic violation had been committed because the officers personally observed the violation. Once the vehicle was lawfully stopped, Officer Klimaszewski observed almost the entire gun.[1] Although at trial defendant denied having a gun, he admitted that, if he did, a silver gun would have stood out against the black hoodie he was wearing. After the officer observed the gun, its seizure to

---

[1] On appeal, defendant does not challenge the officer's right to shine the flashlight into the vehicle.

ensure officer safety during the traffic stop was reasonable. Defendant then spontaneously volunteered to the officers that the object was not a gun but a lighter. At trial, several officers testified to hearing this remark. Officer Klimaszewski testified that, after this remark, defendant was arrested, handcuffed, placed in the back of a police vehicle, and transported to a police station.

¶ 41       On appeal, defendant argues that, at the moment of arrest, the officers did not know that defendant lacked a FOID card or a concealed carry permit or that he was a convicted felon and, thus, they lacked probable cause. By contrast, the State argues that this lie provided probable cause to believe that defendant did not legally possess the gun because a lawful owner would not have volunteered a false statement.

¶ 42       It is well established that "[a] false exculpatory statement is probative of a defendant's consciousness of guilt." (Internal quotation marks omitted.) *People v. Milka*, 211 Ill. 2d 150, 181 (2004); *People v. Moore*, 2018 IL App (2d) 160277, ¶ 32 ("false exculpatory stories" can "be viewed as evidence of consciousness of guilt"); *People v. Jones*, 2014 IL App (3d) 121016, ¶¶ 32-33 (false exculpatory statements are evidence of defendant's consciousness of guilt); *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 113 (a false exculpatory statement can be a factor in establishing guilt beyond a reasonable doubt); *Miranda v. Arizona*, 384 U.S. 436, 477 (1966) ("no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory,' " as the latter, when proven false, are "incriminating in any meaningful sense of the word").

¶ 43       In addition, this court has long held that "[m]any factors are relevant to a determination of probable cause, including but not limited to: *** whether it appears that defendant has made false exculpatory statements." *People v. Hardaway*, 307 Ill. App. 3d

592, 604 (1999); see also *Berry*, 314 Ill. App. 3d at 7 (defendant's false exculpatory statement about how long he had possessed the victim's cellphone contributed to a finding of probable cause); *People v. Hendricks*, 253 Ill. App. 3d 79, 89 (1993); *People v. Tyler*, 128 Ill. App. 3d 1080, 1088 (1984) ("knowledge that an explanation offered is untrue" may be "considered in determining whether there was probable cause to arrest").

¶ 44        In some ways, this case is similar to a drug arrest where the police officer did not actually observe the illegal substance prior to the arrest. Probable cause does not require officers to verify that a substance is an illegal drug before they can arrest, if they have already witnessed suspicious hand-to-hand transactions. *E.g.*, *People v. Harris*, 352 Ill. App. 3d 63, 66-68 (2004). Similarly, in the case at bar, probable cause did not require the officers to verify defendant's lack of a FOID card prior to arrest, once they had heard his false exculpatory statement. Similar to a drug case where officers act promptly to confirm the illegal nature of the substance seized, so too the officers in the case at bar acted promptly to confirm defendant's illegal possession of the item seized. Reasonableness is the touchstone of the fourth amendment; in the case at bar, the officers acted reasonably at every step of the way. *Jones*, 215 Ill. 2d at 268-69 ("The touchstone of a fourth amendment analysis 'is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." ' " (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977), quoting *Terry*, 392 U.S. at 19). Thus, we do not find defendant's claim persuasive that the officers lacked probable cause when they arrested him, handcuffed him, placed him in the back of a police vehicle, and transported him to a police station.

¶ 45     Defendant further argues[2] that he was arrested the moment that Officer Klimaszewski drew his weapon and directed defendant out of the vehicle. As we already observed, the officer drew his weapon only after first observing that defendant was armed. Defendant argues that the moment the officer's weapon was drawn, the stop became an arrest and the officers needed probable cause. In support of his argument that drawing a weapon creates an arrest, defendant cites *Surles*, 2011 IL App (1st) 100068. However, the *Surles* court found nothing of the kind. Although the *Surles* court stated that an officer's approach with a gun drawn changes "the mood" of the encounter to "more like an arrest," the court made clear that the *Surles* defendant was not actually arrested until he was handcuffed. *Surles*, 2011 IL App (1st) 100068, ¶ 27. The *Surles* court repeated this finding a couple of times. First, the *Surles* court stated: "we conclude that defendant was arrested *from the time he was handcuffed* by Officer McGrew." (Emphasis added.) *Surles*, 2011 IL App (1st) 100068, ¶ 27. The trial court then repeated that it "found that defendant was placed under arrest *when he was handcuffed*." (Emphasis added.) *Surles*, 2011 IL App (1st) 100068, ¶ 28. Thus *Surles* does not stand for the proposition that defendant argues.

¶ 46     Defendant argues, in essence, that a police officer must stand by a vehicle and not draw his weapon, as an armed passenger exits the vehicle. We are not aware of any opinion that has made such a finding and defendant does not cite one to support that proposition. It is well-established law that officers may frisk a passenger for weapons after developing a reasonable suspicion that the passenger is armed. *E.g.*, *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶ 92 ("[T]he passenger of a stopped car, not himself suspected of engaging in

---

[2] Although defendant raises this issue in his reply brief, forfeiture is a limitation on the parties not the court. *People v. Perry*, 2014 IL App (1st) 122584, ¶ 20 (although defendant did not raise a particular argument in his opening brief, this court addressed it, observing that forfeiture limits the parties' ability to raise an issue, but not the court's ability to address it).

criminal behavior, could be patted down for weapons when officers developed a reasonable suspicion that he was armed."). It is hard to imagine a better reason for developing a suspicion that a passenger is armed than actually viewing the passenger with a gun. *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶ 80 (observing just "the outline of a weapon" in the defendant's pants pocket, by itself, was enough of a "specific and articulable fact" to justify "a reasonable suspicion" that defendant was armed). After an officer views a gun, it would be completely unreasonable to require the officer to stand by the vehicle without his hand on his own gun. *Johnson*, 555 U.S. at 331 (noting "the risk of a violent encounter in a traffic[ ]stop"); *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (traffic stops are "especially fraught with danger to police officers"); *Mimms*, 434 U.S. at 110 (noting "the inordinate risk confronting an officer as he approaches a person seated in an automobile"); *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (the stop of a vehicle with multiple occupants "increases the possible sources of harm to the officer").

¶ 47      For all the foregoing reasons, we do not find persuasive defendant's arguments that the officers lacked probable cause or acted unreasonably, which is the touchstone of a fourth amendment analysis. *E.g.*, *Jones*, 215 Ill. 2d at 268-69.

¶ 48                              II. Jury Deliberations

¶ 49      Second, defendant argues that the trial court coerced a guilty verdict when it instructed the jurors to keep deliberating, after they sent out a note with two questions. The first question stated that they were currently at "9 guilty[,] 3 not guilty. What next?"

¶ 50      The trial court discussed the note with the attorneys from both sides and then informed the attorneys that, with respect to this first question, it was going to answer, "Please

continue to deliberate." Defense counsel indicated his endorsement of this approach by stating, "Right."

¶ 51    When the trial court told counsel that it was going to inform the jurors with respect to the second question that "the attorneys have checked and the transcripts are unavailable," defense counsel requested that the trial court inform the jurors specifically that the transcripts were unavailable "today." The trial court agreed immediately, stating that it "will say that they are unavailable today."

¶ 52    A party cannot invite an error by the trial court and then use it as a basis for appeal. "Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error." *People v. Manning*, 2017 IL App (2d) 140930, ¶ 16; see also *People v. Cox*, 2017 IL App (1st) 151536, ¶ 73; *People v. Hughes*, 2015 IL 117242 ¶ 33 ("the invited error rule" states that "a party cannot complain of error that it brought about or participated in"); *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (when a party "procures, invites, or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal). "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 53    In the case at bar, the trial court discussed the note with the attorneys for the express purpose of gaining their input and, in fact, input defense counsel's one requested change. The defense indicated that it was in perfect agreement with the trial court's intended approach by stating, "Right." See *People v. Caffey*, 205 Ill. 2d 52, 113-14 (2001) (when the trial court asked the defense counsel if he had any objection to the State playing a 911 tape and counsel

replied, " 'No objection, Judge,' " the defendant thereby "acquiesced in the admission of this evidence"); *Cox*, 2017 IL App (1st) 151536, ¶¶ 72-75 (the invited error doctrine barred defendant's claim on appeal about the admission of a hearsay statement, when defense counsel had stated "no objection" at trial to its admission). A defendant cannot procure an action in the court below, and then complain about it on appeal. Therefore, we cannot find that the trial court committed any error.

¶ 54    On appeal, defendant concedes that he forfeited this claim for our review by failing to object to it in the court below and asks us to review it under the plain error doctrine. The plain error doctrine permits a reviewing court to consider a forfeited error under certain circumstances. *People v. Sebby*, 2017 IL 119445, ¶ 48; *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). However, the first step of any plain error analysis is to determine whether "a clear or obvious error" occurred. *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565. As we already explained above, we cannot find that the trial court committed any error when the defense invited the action complained of. Where a defendant "affirmatively acquiesced to the error by agreeing to the [trial court's] proposed answer to the jury," the plain error doctrine does not apply. *People v. Peel*, 2018 IL App (4th) 160100, ¶¶ 32, 36. "Plain-error analysis applies to cases involving procedural default [citation], not affirmative acquiescence [citation]." *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011); see also *Peel*, 2018 IL App (4th) 160100, ¶ 32.

¶ 55    In addition, defendant claims that his trial counsel was ineffective by failing to object to the trial court's proposed response. *Peel*, 2018 IL App (4th) 160100, ¶ 36 (where a defendant affirmatively acquiesced to the trial court's response to a jury's note, the claim can still be reviewed under a claim of ineffective assistance of counsel).

¶ 56    Every Illinois defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Domagala*, 2013 IL 113688, ¶ 36. Claims of ineffective assistance are judged against the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland* for Illinois)). To prevail on a claim of ineffective assistance, a defendant must show both (1) that counsel's performance was deficient and (2) that this deficient performance prejudiced defendant. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687).

¶ 57    To establish the first prong, that counsel's performance was deficient, a defendant must show "that counsel's performance was objectively unreasonable under prevailing professional norms." *Domagala*, 2013 IL 113688, ¶ 36. Counsel's performance "must be evaluated based on the entire record." *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 114.

¶ 58    To establish the second prong, that this deficient performance prejudiced the defendant, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 694). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004); *People v. Colon*, 225 Ill. 2d 125, 135 (2007).

¶ 59    Since a defendant must satisfy both prongs of the *Strickland* test in order to prevail, a trial court may dismiss the claim if either prong is missing. *People v. Peterson*, 2017 IL

120331, ¶ 79; *People v. Cherry*, 2016 IL 118728, ¶ 24; *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

¶ 60      To establish the first prong, deficient performance, a defendant must overcome "the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). *Accord People v. Clendenin*, 238 Ill. 2d 302, 317 (2010); *People v. Moore*, 358 Ill. App. 3d 683, 689 (2005). Our supreme court has instructed its appellate courts to "be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). "[A] mistake in trial strategy" will not, by itself, render representation constitutionally defective. *Peterson*, 2017 IL 120331, ¶ 80.

¶ 61      The failure to offer an instruction when the jury is clearly confused about an element of the case may rise to the level of deficient performance. *People v. Lowry*, 354 Ill. App. 3d 760, 767 (2004). However, such was not the case here. The jurors' note did not indicate any confusion about any aspect of the original instructions provided to them.

¶ 62      In general, "what instructions to tender" is a matter of trial strategy. *Lowry*, 354 Ill. App. 3d at 766; *People v. Mims*, 403 Ill. App. 3d 884, 890 (2010) (" 'Defense counsel's choice of jury instruction is considered a tactical decision, within the discretion of defense counsel.' " (quoting *People v. Bobo*, 375 Ill. App. 3d 966, 977 (2007)). In the case at bar, defense counsel may have been hoping for an outright acquittal, if the jurors simply kept deliberating. The second question, which was submitted at the same time as the first and which sought more information, indicated that the jurors were not deadlocked but were still

in the process of carefully reviewing the evidence and deliberating. At that moment, it appeared that just three hours of this process had already produced three naysayers to the State's case. Defense counsel's strategy seemed to be one of delay, where he asked the trial court to instruct the jurors that the transcripts were not available "today," thereby encouraging them to continue to deliberate until tomorrow. The belief that time was on his side was the product of strategy, not incompetence. As a strategic decision, we cannot find that it was the result of ineffectiveness. While through the lens of hindsight, defendant now views this strategy as mistaken, that does not mean that it was constitutionally deficient. *Perry*, 224 Ill. 2d at 344 (we must make "every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight"); *Peterson*, 2017 IL 120331, ¶ 80 ("a mistake in trial strategy" will not, by itself, render representation constitutionally defective).

¶ 63    In support, defendant cites *People v. Wilcox*, 407 Ill. App. 3d 151 (2010), which bears little resemblance to the case at bar. In *Wilcox*, the jury sent out a note stating that " '[w]e are 11 to 1 on all 4 propositions.' " *Wilcox*, 407 Ill. App. 3d at 163. The defense counsel suggested, and the State agreed, that the trial court should send back a note to the jurors telling them "to continue to deliberate"—much as defense counsel agreed to do in the case at bar. *Wilcox*, 407 Ill. App. 3d at 163. However, that is where any similarity ends. In *Wilcox*, there was no issue about the instruction to "continue to deliberate." *Wilcox*, 407 Ill. App. 3d at 163. What was at issue in *Wilcox* was what the trial court decided to *add* to that simple directive. *Wilcox*, 407 Ill. App. 3d at 164-65. Over the defense counsel's objection, the trial court added that, when the jurors " 'were sworn in as jurors and placed under oath [they] pledged to obtain a verdict' " and, further, that they should " 'obtain a verdict.' " *Wilcox*, 407

20

Ill. App. 3d at 163. It was these additions that defense counsel objected to, both before the trial court and on appeal. It was these additions that caused this court to reverse on the ground that the trial court's response was coercive. However, since nothing like these additions was present in our case, *Wilcox* does not affect the outcome here.

¶ 64    For the foregoing reasons, we do not find persuasive defendant's claim that the trial court's response to the jury's note requires reversal.

¶ 65                                    III. Sentencing

¶ 66    Lastly, defendant claims that the trial court abused its discretion when it sentenced him to 7 years, which was at the lower end of the applicable 3 to 14 year sentencing range.[3] On appeal, the parties agree that the appropriate sentencing range was 3 to 14 years and that defendant was sentenced within this range. Defendant was convicted of unlawful possession of a weapon by a felon (UPW), and the UPW statute specifically provides that a "second or subsequent violation" makes a defendant a Class 2 offender, thereby requiring a 3- to 14-year sentencing range. 720 ILCS 5/24-1.1(e) (West 2014).

¶ 67    On appeal, defendant claims that the trial court (1) improperly concluded that defendant was eligible for an extended term sentence, which would have required a minimum of 7 years and a maximum of 14 years, and (2) improperly considered defendant's prior felony conviction in aggravation, thereby resulting in an impermissible double enhancement.

¶ 68    For the following reasons, we do not find these claims persuasive.

_____

[3] Fourteen minus three is eleven. Half of eleven is five and a half. Five and a half, plus the three-year minimum, means that the exact midpoint of the sentencing range would have been a sentence of eight and a half years. Since defendant received seven years, his sentence was in the lower half of the sentencing range, or less than the midpoint.

21

¶ 69 A trial court has broad discretion in sentencing and should be reversed only when it abuses that discretion. *People v. Snyder*, 2011 IL 111382, ¶ 36; *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). Generally, when a trial court considers a broad range of information—including arguments in aggravation and mitigation, the presentence report, and any letters or testimony submitted in support—and then sentences within the statutory range, a reviewing court will not find an abuse of discretion. See *Patterson*, 217 Ill. 2d at 448. The trial court's sentencing determination is entitled to "substantial deference" because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits and age." *Snyder*, 2011 IL 111382, ¶ 36; *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). A reviewing court will find an abuse of discretion in sentencing only when the sentence is greatly at variance with the spirit or purpose of the law or manifestly disproportionate to the nature of the offense. *Snyder*, 2011 IL 111382, ¶ 36; *Alexander*, 239 Ill. 2d at 212.

¶ 70 First, defendant argues that the trial court's statements at sentencing indicate that the trial court found that an extended term sentence applied, that the minimum sentence for an extended term was seven years, and that, as a result, defendant's seven-year sentence represented a failed attempt by the trial court to impose the minimum possible sentence. In other words, defendant argues that the trial court was trying to impose the minimum but blundered.

¶ 71 However, at sentencing, the trial court specifically stated, "I feel that the defendant's request for the minimum sentence is not warranted." Thus, defendant's argument that the trial court was attempting to impose the minimum is simply not supported by the record.

¶ 72    At sentencing, the trial court stated that, in the case at bar, "the minimum is three, the maximum is 14." Explaining its choice within that range, the trial court stated:

"I feel that the defense's request for the minimum sentence is not warranted based upon the background that I had detailed and likewise I feel the State's request for something in the significant or maximum range of 14 would not be where I would be either. In my view, the appropriate sentence taking into account all of the factors in aggravation and mitigation is 7 years in the Illinois [D]epartment of [C]orrections."

Thus, the trial court was clear that its decision not to impose the three-year minimum was not the result of some blunder, but the product of a careful decision-making process. As a result, we do not find defendant's first argument persuasive.

¶ 73    Second, defendant claims that his sentence was the result of an impermissible double enhancement because, while fashioning an appropriate sentence within the applicable sentencing range, the trial court considered the same prior felony conviction that the State had used to establish an element of defendant's UPW offense. In *People v. Saldivar*, 113 Ill. 2d 256 (1986), the Illinois Supreme Court held that reconsideration of a factor inherent in the legislature's definition of the offense is impermissible. However, in *People v. Thomas*, 171 Ill. 2d 207 (1996), our supreme court further explained the holding in *Saldivar*, stating:

"This court, in *Saldivar*, made it clear that although sentencing courts cannot consider an element inherent in the offense as an aggravating factor, that rule would not be rigidly applied, 'thereby restricting the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence.' " *Thomas*, 171 Ill. 2d at 226-27 (quoting *Saldivar*, 113 Ill. 2d at 268).

A reasoned judgment as to the proper penalty must include consideration of many relevant factors, including the particular circumstances of the offense. *Thomas*, 171 Ill. 2d at 227; *Saldivar*, 113 Ill. 2d at 268. Thus, "*Saldivar* allowed the sentencing court some discretion in 'reconsidering' as an aggravating factor *** that which, arguably, had already been considered by the legislature in establishing the applicable sentencing range for the offense." *Thomas*, 171 Ill. 2d at 227. Based on *Saldivar*, the *Thomas* court found that, "while the *fact* of a defendant's prior convictions determines his eligibility" for a particular sentence, "it is the *nature and circumstances* of these prior convictions which, along with other factors in aggravation and mitigation, determine the exact length of that sentence." (Emphases in original.) *Thomas*, 171 Ill. 2d at 227-28.

¶ 74     Similarly, in the case at bar, the trial court considered, one by one, all the statutory aggravating and mitigating factors, including defendant's prior criminal history. The trial court reviewed defendant's entire criminal history in detail from 2002 through 2015. While discussing this history and the factors in aggravation and mitigation, the trial court included the conviction that the State used to establish an element of the offense. After reviewing the trial court's statements at sentencing, we cannot find that the trial court ran afoul of the guidelines set forth by our supreme court in *Saldivar* and *Thomas*. Thus, we do not find defendant's double-enhancement argument persuasive.

¶ 75                                          CONCLUSION

¶ 76     On appeal, defendant claimed (1) that the trial court erred in denying his motion to suppress the gun, (2) that the trial court coerced a guilty verdict by telling the jurors to continue to deliberate, and (3) that, in the alternative, his sentence must be vacated and his

case remanded for resentencing because the trial court improperly used an element of the offense—namely, his prior felony conviction—as an aggravating factor.

¶ 77   For the foregoing reasons, we do not find defendant's claims persuasive and affirm his conviction and sentence.

¶ 78   Affirmed.