NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200192-U

NO. 4-20-0192

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 28, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Champaign County |
| HENRY PETTIGREW, | ) | No. 18CF1470 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The facts known to the searching police officer at the time he patted down the defendant did not give rise to a reasonable suspicion that the defendant was armed and dangerous, and thus, the circuit court was correct to grant the defendant's motion to suppress a pistol that the police officer found in the search.

¶ 2    Defendant, Henry Pettigrew, was charged in the Champaign County circuit court with one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)). On the ground of the fourth amendment (U.S. Const., amend. IV), he moved to suppress a pistol that a police officer had found in his pants pocket during a traffic stop. See *Mapp v. Ohio*, 367 U.S. 643, 649 (1961); *People v. Brocamp*, 307 Ill. 448, 455 (1923). After hearing evidence, the court granted the motion. The State, having filed a certificate of impairment, appeals. See *People v. Drum*, 194 Ill. 2d 485, 489 (2000). The material facts appear to be undisputed. We conclude, *de novo* (see

*People v. Topor*, 2017 IL App (2d) 160119, ¶ 14), that the court was correct to grant the motion for suppression. Therefore, we affirm the judgment.

¶ 3                                       I. BACKGROUND

¶ 4        On October 21, 2018, at 7:52 p.m., Johnathan Broadnax, a Champaign police officer, pulled over a sports utility vehicle for improper lane usage (625 ILCS 5/11-709(a) (West 2016)). Three other police officers arrived on the scene. It turned out that the driver, Dearion Jenkins, who was on mandatory supervised release for armed robbery, lacked a valid driver's license. At the direction of the police, he came out of the vehicle, and he was placed under arrest.

¶ 5        Jenkins's two passengers also were asked to come out of the vehicle: the front seat passenger, Andrea Reynolds, and the back seat passenger, defendant, who had been sitting behind Jenkins. As defendant was coming out of the vehicle, Tyler Darling, a Champaign patrol officer, warned his colleagues: " ['T]his kid in the gray coat, be careful. He was out there at a shooting and was giving us all kinds of shit.['] " Darling was alluding to a shooting incident at Countrybrook Apartments earlier in the day. Defendant was not thought to be one of the shooters, but when the police were at the apartment building investigating the shooting, a crowd gathered around and grew unruly, and defendant was one of the bystanders heckling the police. Darling seemed to recall a couple of other things about defendant—that defendant's name had been mentioned in police station briefings as a member of a street gang and as a "gun[ ]toter"—but Darling did not communicate this additional information to the other police officers at the traffic stop.

¶ 6        When taking defendant out of the vehicle, Kevin Pesavento, a Champaign police officer, heard Darling's warning about " [']this kid in the gray coat.['] " Pesavento decided to pat down defendant for weapons. The reason, Pesavento explained to defendant, was that Jenkins was

on parole and Pesavento wanted to make sure that Jenkins had not handed anything to defendant. In the frisk, Pesavento found a pistol in defendant's pants pocket.

¶ 7      Sometime after the passengers were removed from the vehicle, Pesavento remarked to the other police officers that there was an open container of liquor in the vehicle but that, under the circumstances, this was not a matter of concern. It was a can of Twisted Tea, with the top popped. The can had been in a brown paper sack on the front passenger floorboard, between Reynolds's feet.

¶ 8                                    II. ANALYSIS

¶ 9      A. The Reasonableness of Pesavento's Suspicion That Defendant Was Armed

¶ 10      If, in an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer becomes aware of facts that reasonably lead the police officer to suspect that the person with whom he or she is dealing is armed and dangerous, the police officer may pat down the person for weapons. *Id.* at 30. Any weapon the police officer seizes in the frisk may be used in evidence against the person from whom the weapon is seized. *Id.* at 31.

¶ 11      In deciding to pat down someone, the police officer may rely not only on facts the police officer observed personally but also on information or guidance from another police officer, such as a flyer from another police department. See *People v. Hensley*, 469 U.S. 221, 232 (1985). Any weapons the police officer finds in the frisk will be admissible in evidence provided that (1) the police officer's reliance on the information or guidance was defensible under an objective reading (see *id.* at 232-33) and (2) the police officer who gave the information or guidance was aware of facts reasonably justifying a suspicion that the person in question was armed and dangerous (see *id.* at 233).

¶ 12          In scrutinizing the constitutionality of a frisk, we have no right to go beyond those principles in *Terry* and *Hensley*. The Supreme Court has recognized: "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, *unless by clear and unquestionable authority of law*." (Emphasis added and internal quotation marks omitted.) *Terry*, 392 U.S. at 9. A frisk is "a serious intrusion upon the sanctity of the person" (*id.* at 17) and must be supported "by clear and unquestionable authority of law" (internal quotation marks omitted) (*id.*). The presumption, therefore, is strongly against any justification broader than that in *Terry* and *Hensley*.

¶ 13          *Hensley* requires us to give an "objective reading" to what Darling told Pesavento: "This kid in the gray coat, be careful. He was out there at a shooting and was giving us all kinds of s***." See *Hensley*, 469 U.S. at 232-33. We must decide whether Pesavento "defensibly" could frisk defendant for weapons, given that admonition by Darling—and also given what Pesavento perceived at the scene, namely, that defendant had been a passenger in a car driven by someone on mandatory supervised release for armed robbery. See *id.* Pesavento sensibly understood Darling to mean not that defendant had been a shooter but, rather, that he had been one of the numerous onlookers who had arrived afterward to jeer at the police officers investigating the shooting. This information from Darling would not have justified Pesavento in suspecting, on the basis of more than a vague hunch, that defendant was armed. See *Terry*, 392 U.S. at 27. That defendant had been riding in a car driven by someone on mandatory supervised release for armed robbery did not create "a reasonable suspicion that the passenger [was] armed." *People v. Lawrence*, 2018 IL App (1st) 161267, ¶ 46.

¶ 14　　　　It is true that Darling, as distinct from Pesavento, had additional information: he seemed to recall that, in briefings in the police station, defendant had been named as a gang member and a "gun[ ]toter." But Darling never communicated this additional information to any of the other police officers at the stop. What counts is what the frisker knew at the time. See *Terry*, 392 U.S. at 21-22. In justifying the frisk of defendant for weapons, the police officer who did the frisk, Pesavento, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. A frisk is a search (*id.* at 16), and in assessing the reasonableness of the search (see U.S. Const., amend. IV), "it is imperative that the facts be judged against an objective standard: would the facts *available to the officer at the moment of the *** search* warrant a man of reasonable caution in the belief that the action taken was appropriate" (emphasis added and internal quotation marks omitted) (*Terry*, 392 U.S. at 21-22). The facts available to Pesavento at the moment of the frisk did not give rise to "a reasonable suspicion that the passenger [was] armed." *Lawrence*, 2018 IL App (1st) 161267, ¶ 46.

¶ 15　　　　　　　　　　B. The Open Container of Liquor

¶ 16　　　　The State argues, alternatively, that Pesavento had probable cause to arrest defendant for violating section 11-502(b) of the Illinois Vehicle Code, which provides that "no passenger may carry, possess[,] or have any alcoholic liquor within any passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." 625 ILCS 5/11-502(b) (West 2016). A warrantless arrest is reasonable under the fourth amendment if there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). One can be arrested for a petty offense. See *People v. Brannon*, 2013 IL App (2d) 111084, ¶ 23. If the police had probable cause to arrest

defendant for violating section 11-502(b), they could search him. See *People v. Gray*, 95 Ill. App. 3d 879, 884-85 (1981).

¶ 17 "Probable cause means that there is a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be searched or seized." *People v. Rice*, 2019 IL App (3d) 170134, ¶ 18. The police had no reasonable ground to believe that defendant possessed, carried, or had the can of alcoholic tea that they found in the car. See 625 ILCS 5/11-502(b) (West 2016). The can was in a paper sack between the feet of the front-seat passenger, Andrea Reynolds. Defendant was in the back seat, behind the driver. There was no evidence that he had anything to do with the liquor, which was physically beyond his reach.

¶ 18 III. CONCLUSION

¶ 19 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 20 Affirmed.