People of the State of Illinois, Plaintiff-Appellee, v. Zachariah Smith, Defendant-Appellant.

Gen. No. 53,284.

First District, Third Division.

February 19, 1970.

-- Gerald W. Getty, Public Defender of Cook County, of Chicago (Nunzio D. Tisci, James N. Gramenos, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Kenneth L. Gillis, Special Assistant State's Attorney and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial the defendant, Zachariah Smith, was found guilty of murdering Holice Malone and was sentenced to a term of fourteen to fifteen years in the penitentiary. He contends that the State did not prove beyond all reasonable doubt that he killed Malone, but that if he did kill him the homicide was voluntary manslaughter, not murder.

Malone was stabbed to death in a Chicago tavern. The State's evidence showed that Malone and his friend Henry Edwards entered the tavern at approximately 10:30 p. m. They and three acquaintances who were already there purchased a pint bottle of wine and drank it in the washroom. The tavern was small—25' x 25'—and was crowded with about thirty men and women. Malone was in the washroom only a few minutes and when he came out he walked toward the front door where Edwards was waiting for him. As he made his way down the aisle he brushed against Smith as the latter turned away from the bar. Words passed between them and Smith pulled out a brown-handled knife and stabbed Malone. Malone grabbed his chest and staggered back. Smith advanced toward him but someone stepped in between them and said, "Leave him alone, he is hurt."

Malone staggered out the door and fell on the sidewalk. Smith, with the knife still in his hand, followed Malone out the door and headed down the street. Edwards followed him. A block from the tavern Edwards stopped a passing police car and, pointing to Smith, said, "That man just stabbed a friend of mine and he still has a knife on him." The officers jumped out of the car, approached Smith, announced they were police officers, and told him to stop and to drop the knife he was holding. After being warned twice, and after mumbling that the man shouldn't have been bothering him, he dropped the open knife. The police arrested him and returned to the tavern. They found Malone lying bleeding on the curb and took him to a hospital where he was pronounced dead.

The arresting officer and an investigating officer testified that Smith had been drinking, and a microanalyst for the police department testified that there were traces of human blood on the blade of the knife Smith dropped.

Smith denied the stabbing. He testified that someone bumped into him as he stood at the bar and that after a brief conversation with this person he left the bar and played the jukebox which was on the opposite wall. He said that Malone came up, turned him around and asked, "Want to get it over with?" Smith answered, "It is all over, man," and they shook hands. He said that they both walked away but that Malone turned and came toward him as if he were going to hit him. Malone backed him up against the wall and Smith held his hands up in the air. Smith had nothing in his hands and he did not know whether Malone had anything in his. He said that as Malone rushed toward him several persons dove between them.

Smith testified that he then turned and walked out of the tavern, unaware that Malone had been hurt. He denied having a knife in his hand during the argument and said that the only one he carried was a small pocket-knife on a key chain which was attached to his belt. He said that if he had a knife in his hand someone must have put it there. He gave the same explanation for the knife he was carrying when he was arrested.

The bartender and two tavern patrons testified on Smith's behalf. Each said that the altercation took place near the jukebox, rather than near the bar where the State's evidence placed it. They said that Malone advanced on Smith as if he wanted to fight; however, they saw no fighting. Two of the witnesses said they saw Malone leave the tavern before Smith; one said Smith left first. All said that they saw no knife in Smith's hands, nor did they see Smith make a forward motion, like a knife thrust, toward Malone.

The bartender also testified that one of the patrons handed him a small knife attached to a key chain which had been picked up from the floor. The defendant's wife testified that this knife was the only one her hus-

band ever carried and that she had never seen the one he had in his possession at the time of his arrest.

Smith argues that his guilt was not proved beyond a reasonable doubt since three witnesses said they did not see him stab Malone and only one witness, Edwards, said that he did; that Edwards' testimony should be viewed skeptically because he was a friend of Malone and his testimony was not corroborated by independent witnesses who were present when the stabbing took place; further, that Edwards was standing near the door and the bartender testified that a person standing there could not see what took place at the jukebox because two telephone booths would obstruct his view.

It matters not that the State presented only one occurrence witness whereas the defense presented three; the testimony of one witness is sufficient to support a conviction if it is positive and the witness credible. People v. Johnson, 24 Ill2d 195, 181 NE2d 164 (1962) ; People v. Uselding, 107 Ill App2d 305, 247 NE2d 35 (1969). Although the friendship between Edwards and the deceased was a factor to be considered by the trial court in weighing the evidence, such friendship would not destroy Edwards' credibility. The court believed his testimony that Malone and Smith encountered each other near the bar, that he saw Smith stab Malone with a brown-handled knife and walk out of the tavern with the knife in his hand. Although Edwards' testimony was not corroborated by other patrons, it was corroborated by the arresting officer and by evidentiary facts and circumstances. Malone died from a stab wound in the heart; when Smith was arrested walking away from the scene of the crime he was clutching the brown-handled knife in his right hand; the knife was found to bear traces of human blood; when arrested Smith muttered that the man should not have bothered him; a small knife and key chain belonging to him were found

on the tavern floor—which suggests that they were pulled from his pocket or brushed from his belt when he reached for the larger knife. Smith was the only person arguing with Malone and, as the court noted in reviewing the testimony, there was no evidence that any person other than Smith was close enough to have stabbed him.

■■■ In a nonjury trial, the trial court must draw the factual conclusions from conflicting testimony and weigh the credibility of the various witnesses. A reviewing court will not interfere with the court's judgment unless the State's evidence is so unsatisfactory that it is of the opinion that guilt has not been established beyond a reasonable doubt. People v. Vail, 74 Ill App2d 308, 221 NE2d 165 (1966). The evidence does not justify a reasonable doubt of the defendant's guilt. The testimony of the State's eyewitness, corroborated in part by the police officer and substantiated by surrounding facts, was far more believable than Smith's testimony that someone put the knife in his hand after Malone was stabbed.

■■ In view of Smith's avowal that he did not stab Malone, his alternative contention that he stabbed him intentionally is incongruous. Nevertheless, a defendant may advance inconsistent defenses and Smith's contention that the killing was voluntary manslaughter must be considered. Voluntary manslaughter is committed if the person who does the killing either unreasonably believes that such action is necessary to defend himself against death or great bodily harm, or if he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. Ill Rev Stats 1967, c 38, § 9–2(b) and (a)(1). The mental state of the accused at the time of the killing is an essential ingredient in determining if an intentional killing is voluntary manslaughter rather than murder. Since Smith

did not testify to his fears or feelings, the objective circumstances must be examined to ascertain whether they could have induced in him the belief that he faced the loss of life or grievous bodily harm, or if they could have aroused in him an uncontrollable passion. If they could have done either, it must be determined if his belief was reasonable or if the provocation was serious enough to excite an intense passion in a reasonable person.

There is no evidence that Smith was threatened with imminent death or great bodily harm, or that the surrounding circumstances were such that he could reasonably believe he was so threatened. Malone brandished no weapon; neither in word nor manner did he threaten the life or limb of the defendant. Considering the occurrence in the light of all the defense testimony, the most that occurred between the parties was their bumping into each other and Malone's hovering near Smith "dancing up and down like a boxer," acting "like he wanted to fight him" or that "he was going to bop him." Nor were the words and actions of Malone the kind that would excite a sudden and intense passion in a reasonable person; they did not constitute the serious provocation which would justify reducing the killing from murder to manslaughter.

The trial court stated that it found no evidence that the stabbing was done under sudden passion or with serious provocation. Neither Smith's testimony nor the evidence extrinsic to his testimony warrants a contrary conclusion. The judgment of conviction is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.