54

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN WOODS, Defendant-Appellant.

(No. 53470; )

First District—February 4, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James B. Haddad, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert L. Best and John Gannon, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

John Woods was indicted for the murder of Raymond Pratt. He was tried by the court, found guilty of voluntary manslaughter and sentenced to the penitentiary for a term of three to ten years. He contends that the evidence did not establish his guilt beyond a reasonable doubt or, in the alternative, that his sentence should be reduced.

The events culminating in the homicide started with a fight between Raymond Pratt and Harvey Woods, the defendant's son, as they and

four other friends were walking home from high school. When the fight ended, Harvey, who was the loser, telephoned his mother and asked for a ride home. She awakened her husband and informed him that their son had been in a fight. Woods placed a loaded gun in his pocket, ran out of the house, got in his car and went for Harvey. When he picked up his son, Harvey was crying and had a large swelling over his eye. On the way home, Harvey saw Pratt and pointed him out to his father.

Woods stopped his car and approached Pratt. He and Harvey testified that Pratt drew a knife, which he ordered him to drop. At the second command Woods took out his gun whereupon Pratt tossed the knife away. Woods and Harvey, the only witnesses to this part of the occurrence, testified that Pratt provoked Harvey into leaving the car and resuming the fight. Woods attempted to break it up. He shoved Harvey toward the car and as he turned around he was struck in the jaw by Pratt. He and Pratt then fought with each other.

This encounter took place in front of the home of Willie and T. C. McCray, two of the boys who had walked home from school with Harvey and Pratt. They and a police officer, Jimmie Pittman, observed the fight in progress and came to the scene just about the time Woods entered the fight. Both McCrays testified that as Woods stepped between Pratt and Harvey, one of Pratt's punches, intended for Harvey, grazed his jaw. They saw Woods pull out his gun, strike Pratt with it and, with gun in hand, chase him into a vacant lot next door. Woods pointed the gun at Pratt and, when two or three feet from him, shot him in the head.

Pittman, an off-duty policeman in civilian clothes, saw Woods enter the fight and strike Pratt over the head with some object. He parked his car and ran to the altercation. He saw Woods chase Pratt into the lot but then lost sight of him. He heard a shot and saw Woods and Harvey come from the lot and walk to their car. Pittman ran into the lot and found Pratt on the ground bleeding from a head wound. Pittman took out his badge and gun and ran to Woods' car shouting that he was a policeman. Woods looked at him and drove away. Pittman shot at Woods' car and hit both rear tires. Woods stopped his car, got out and shot at Pittman. Pittman returned to his own car and pursued Woods. After he saw him enter a house and noted the address he returned to Pratt and called for help. Pratt was taken to a hospital where he died a few hours later.

Woods denied that he chased Pratt but said that they fought into the lot. He testified that as he and Pratt were fighting, Pratt dashed 25 or 30 feet away, picked up a piece of brick and threw it at him. Pratt reached for a second brick and Woods yelled for him to put it down. As Pratt was straightening up Woods took the gun from his pocket to let him know, he said, that he still had it. When Pratt saw the gun he dived to the

ground. Woods testified that at this point the gun accidentally discharged, that he did not aim it at Pratt and had no intention of shooting him. Pratt did not get up. Woods left the lot, told one of the McCray boys to see if Pratt was hurt, returned home and then a few minutes later, went to a police station and reported the shooting.

Harvey Woods' testimony was substantially the same as his father's. He said, however, that his father and Pratt were out of his sight when the shot was fired. He saw a man with a gun run into the lot as his father came out. He told his father to "come on," that the man might kill him.

Although Woods testified that he did not intentionally shoot Pratt, his attorneys on appeal argue that the shot was fired in self-defense. They assert that Woods must have believed that he was in danger of great bodily harm because Pratt had struck him on the jaw, fought with him, threw a brick at him and was about to throw another. They argue that his belief that he was in danger was reasonable as was his display of a gun to deter Pratt from further aggression.

Neither the State's nor the defendant's evidence supports a theory of self-defense. From the State's evidence, the defendant could have been found guilty of murder. Pratt struck him but once and this was a glancing, unintentional blow. He hit Pratt three times over the head with his gun. Pratt offered no resistance; he ran away and Woods pursued him. Woods raised his gun, deliberately shot Pratt, let him lay where he fell, turned and walked out of the lot. The defendant's own evidence negates self-defense. He and his son were together; Pratt was alone. He was 44 years old; Pratt was 16. Harvey was six feet tall and weighed 247 pounds; Pratt was 5'9" and weighed 145 pounds. Woods was armed with a deadly weapon; Pratt had thrown his weapon away. Pratt abandoned the fisticuffs, retreated to the far side of the lot and threw part of a broken brick from there. Woods drew his gun when Pratt was in a crouched position, picking up another brick fragment. When Pratt saw the gun he dove for cover and was shot while he was on the ground.

■■ The defendant's contention that he acted in self-defense is not consistent with the evidence. However, inconsistent defenses may be advanced. (*People v. Smith* (1970), 121 Ill.App.2d 105, 257 N.E.2d 261.) In determining whether Woods acted in self-defense it is essential to know his mental state at the time of the killing. A defendant's mental state may be deduced from the facts surrounding the killing if he does not testify as to his thoughts, fears or intuition. Woods did not testify that he acted in self-defense, that he thought he was in danger or that he feared death or bodily harm. Statements in his brief that he "must have actually believed that the danger existed" and that he "actually believed

the danger existed." cannot substitute for the lack of his own testimony that he believed he was in danger or for the lack of evidence showing actual danger. Thus, at the trial there was neither evidence nor testimony to support a self-defense theory. The trial court cannot be held in error for not considering a defense not intimated by the defendant nor suggested by the evidence.

■■■ In a non-jury trial the court is the trier of fact. When the evidence is conflicting the court must judge the credibility of the witnesses and decide the weight to be given to their testimony. The court's finding will be reversed only when it is founded on evidence so unsatisfactory that there remains a reasonable doubt of the defendant's guilt. (*People v. Stover* (1970), 121 Ill.App.2d 263, 257 N.E.2d 580.) The evidence supported the court's finding that Woods was guilty of intentional homicide. The court's conclusion that the homicide was voluntary manslaughter rather than murder was within the range of the evidence and will be affirmed.

■■ The penalty for voluntary manslaughter is imprisonment in the penitentiary from one to twenty years. (Ill. Rev. Stat., 1967, ch. 38, par. 9—2(c).) The defendant was sentenced to a term of three to ten years and he complains that this is excessive. The evidence produced at the hearing in aggravation and mitigation showed that Woods had no criminal record, was steadily employed, was a good family man and well-regarded by his pastor and employer. The trial court considered these factors when the penalty was imposed. Also taken into consideration was the fact that Woods had taken the life of a 16-year-old youth. There is no reason to hold that the trial court abused its discretion in imposing the sentence that it did. The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and SCHWARTZ, J., concur.