2021 IL App (1st) 191922-U

FIRST DIVISION
August 16, 2021

No. 1-19-1922

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 0100 |
| | ) | |
| JOSE RODRIGUEZ, | ) | The Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in denying defendant's motion to quash arrest and suppress evidence. Defendant's conviction for unlawful use or possession of a weapon by a felon is affirmed.

¶ 2    Defendant, Jose Rodriguez, was convicted of unlawful use or possession of a weapon by a felon. Rodriguez was subsequently sentenced to eight years' imprisonment and three years' mandatory supervised release. Rodriguez appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 6, 2016, Rodriguez was arrested by two Chicago Police officers following a traffic stop during which a gun was recovered from the area between the driver's seat and the center console of the vehicle Rodriguez was driving.

¶ 5    On December 23, 2016, Rodriguez was indicted on one count of armed habitual criminal in violation of 720 ILCS 5/24-1.7(a) (West 2016), four counts of unlawful use or possession of a weapon by a felon in violation of 720 ILCS 5/24-1.1(a) (West 2016), and six counts of aggravated unlawful use of a weapon in violation of 720 ILCS 5/24-1.6(a)(1) and (2) (West 2016).

¶ 6    On March 28, 2018, Rodriguez filed a motion to quash arrest and suppress evidence, arguing that the arresting officers did not have probable cause that he had committed any traffic violations or was unlawfully in possession of a weapon. Rodriguez argued that all evidence stemming from the unlawful traffic stop and arrest, including the gun, should be suppressed.

¶ 7    Before trial the state *nolle prosequi* all charges except the armed habitual criminal charge. Rodriguez waived his right to a jury trial. A hearing on Rodriguez's motion to quash arrest and suppress evidence was held contemporaneously with the trial.

¶ 8    The testimony and evidence adduced at the hearing and trial is summarized as follows. The state entered certified copies of Rodriguez's convictions for burglary (05 CR 2429403) and aggravated battery with a firearm (08 CR 1943401).

¶ 9    The state called Officer Michael Suing. He testified that on December 6, 2016, around 9:50 p.m., Suing and his partner, Officer Pulia, were on patrol in a marked squad car near 26th Street and Central Park Avenue. On direct examination Officer Suing stated he was the driver, but on cross-examination stated he was the passenger. Officer Suing was stopped at the traffic light at the intersection of 26th and Central Park facing eastbound on 26th Street when he observed Rodriguez,

who he identified in court, driving northbound on Central Park, crossing 26th Street. Officer Suing saw that Rodriguez was "utilizing his mobile telephone" while driving. Officer Suing could not remember the color, size, or brand of the cell phone, nor could he recall if the phone was illuminated. Rodriguez was holding the cell phone in his left hand. Officer Suing turned onto Central Park behind Rodriguez and ran the license plate of Rodriguez's vehicle. Rodriguez turned right onto 25th Street without using his turn signal, at which point Officer Suing initiated a traffic stop. Officer Suing activated the emergency lights on the police vehicle once he was on 25th Street.

¶ 10 Rodriguez stopped his vehicle at 3515 West 25th Street. Officer Suing approached the driver side of Rodriguez's vehicle and Officer Pulia approached the passenger side. There was a female passenger in the front seat and an infant in a car seat in the back. Officer Suing had a brief conversation with Rodriguez regarding his license and identification. Officer Pulia then said "gun, get him out," and Officer Suing removed Rodriguez from his vehicle. Officer Suing "passed" Rodriguez to Officer Pulia and looked inside the vehicle, where he observed a gun "between the front seat and the center console area sticking up." Officer Suing recovered a loaded black .40 caliber semi-automatic Ruger handgun from Rodriguez's vehicle. As Officer Suing reached for the gun, Rodriguez stated "it's mine, it's mine. They keep trying to kill me."

¶ 11 Officer Pulia read Rodriguez his *Miranda* rights on the street. Officer Suing ran Rodriguez's name through the CLEAR system and discovered he was driving on a revoked license and on parole for a felony offense. Rodriguez was then transported to the police station. At the station, while he was being processed, Rodriguez spontaneously told Officer Suing that he "bought the gun from a black guy on the west side for $500. [He] got shot it July. [He] need[ed] it for protection." Officer Suing wrote Rodriguez two tickets, one for using a mobile phone while driving and one for failing to use a turn signal.

¶ 12    Rodriguez called Michael Montoya to testify. Before testifying, Montoya was advised that if he were to testify to owning the firearm at issue, he would be charged with a felony because he had neither a Firearm Owner Identification Card nor a Concealed Carry License. Montoya nonetheless testified as follows. On December 6, 2016, Montoya borrowed an older model, silver or gray Honda Accord from Diana Rodriguez, defendant's wife, and put his gun in the car, to his right between the driver's side and the passenger's side. He concealed the gun underneath the seat. His gun was a .40 caliber Ruger. The gun was blue steel and had a rubber grip. Montoya had bought the gun a couple of years ago for protection. Montoya took the car from his friend's sister's house on 51st and Damen to drop off his ex-girlfriend at the train station at 51st and Western. They drove around smoking marijuana and drinking before he dropped her off. Montoya gave the vehicle back to Diana the same day but forgot to take his gun. Montoya initially testified that he borrowed the car at "like 10:00," but then stated he borrowed the car earlier that day at 6:00 a.m. for "two, three hours." Later Montoya stated that he took the car at 6:00 p.m. At the close of his testimony, the trial court advised Montoya that he would be placed under arrest based on his judicial admissions.

¶ 13    Defendant then testified he was driving down Central Park towards 26th Street with his wife and three children. Rodriguez was taking his wife to Norwegian American Hospital because she was pregnant and experiencing stomach pain and bleeding. He left from his sister's house on 52nd Street around 8:00. They stopped at KFC for water on their way. He was not using a cell phone while driving and did not own a cell phone. He did not commit any other traffic violations, but he was driving on a revoked license. He saw the squad car's lights behind him on Central Park, and he pulled over. Officer Suing called him "Wacko," opened his door, and pulled him out of the car. Officer Suing searched his clothes, then put him in the back of the squad car. The police then

searched his vehicle. Rodriguez did not know there was a gun in the car. It was not visible when he was driving. He never made any statements to the police.

¶ 14    In rebuttal, Officer Joseph Pulia testified that on December 6, 2016, around 9:54 p.m., he was the passenger in a marked police vehicle working with Officer Suing. Officer Pulia witnessed "a cell phone violation." He could not recall the brand or color of the cell phone, but it was four inches in size. The cell phone was in Rodriguez's left hand. After the vehicle was stopped, Officer Pulia approached the passenger side. He was looking through the windshield when he observed the handle of a firearm in between the driver's seat and the center console area. He then yelled "gun, get him out," to Officer Suing. Officer Suing removed Rodriguez from the vehicle. As Rodriguez exited the vehicle, he stated "it's mine, it's mine, people are trying to kill me." Officer Pulia then gave Rodriguez his *Miranda* rights from memory. He did not question Rodriguez on the street, but instead relocated to the police station. At the police station, Officer Pulia said Rodriguez told him he had "bought the gun from a black guy on the west side for 500 bucks. He had just been shot in July, needed it for protection." Officer Pulia identified Rodriguez as the driver of the vehicle.

¶ 15    The trial court found that Officer Pulia and Officer Suing had reasonable suspicion to stop Rodriguez's vehicle based on the cell phone and turn signal violations, and thus denied Rodriguez's motion to quash arrest and suppress evidence. The trial court then found Rodriguez not guilty of count one of the indictment, the offense of armed habitual criminal, because there was no valid predicate felony pled in the indictment. The trial court found Rodriguez guilty of the lesser included offense of unlawful use or possession of a weapon by a felon.

¶ 16    The trial court denied Rodriguez's motions to reconsider the denial of his motion to quash arrest and suppress evidence and motion for a new trial. Rodriguez was sentenced to eight years'

5

imprisonment and three years' mandatory supervised release, with credit for 278 days served in presentence custody.

¶ 17    Rodriguez filed a timely notice of appeal.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, Rodriguez questions the trial court's credibility determinations and argues that the testimony of Officers Suing and Pulia was not sufficient to establish reasonable suspicion or probable cause for the officers to stop and search his vehicle. Rodriguez also argues that the officers' testimony was not credible enough to prove beyond a reasonable doubt his conviction for unlawful possession of a weapon by a felon. Finally, Rodriguez raises two claims of plain error for the first time on appeal. We address these arguments in turn.

¶ 20        A. Rodriguez' Motion to Quash Arrest and Suppress Evidence Was Properly Denied

¶ 21    Rodriguez argues that the trial court erred in denying his motion to quash arrest and suppress evidence because he was not lawfully stopped and searched.

¶ 22    "The fourth amendment to the United States Constitution generally protects citizens against unreasonable seizures." *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 31 (citing U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001)). "A vehicle stop implicates the fourth amendment because stopping a vehicle and detaining its occupants constitutes a 'seizure' within the meaning of the fourth amendment." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *People v. Jones*, 215 Ill. 2d 261, 270 (2005)).

¶ 23    A police officer may stop a vehicle and briefly detain a person for investigatory purposes if the officer reasonably believes the person has committed, or is about to commit, a crime. *People v. Timmsen*, 2016 IL 118181, ¶ 9 (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). The police officer must have a "reasonable, articulable suspicion" of criminal activity to justify the stop. *Id.* "The

investigatory stop must be justified at its inception and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen." *Id.*

¶ 24    "[A] vehicle stop is subject to the requirement of reasonableness in all the circumstances." *People v. McDonough*, 239 Ill. 2d 260, 267 (2010). Although a vehicle stop "may be justified on something less than probable cause," *People v. Hackett*, 2012 IL 111781, ¶ 28, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *McDonough*, 239 Ill. 2d at 267 (quoting *Whren*, 517 U.S. at 810). "After observing a traffic violation, the police may seize the vehicle's driver and any passengers for the duration of the traffic stop. [Citation.] Once a vehicle has been lawfully detained for a traffic violation, the police officers may order the driver and any passengers out of the vehicle without violating the fourth amendment." *People v. Lawrence*, 2018 IL App (1st) 161267, ¶ 38.

¶ 25    "In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence." *Hackett*, 2012 IL 111781, ¶ 18. "A trial court's ultimate legal ruling as to whether suppression is warranted is subject to de novo review." *Id.*

¶ 26    Rodriguez first argues, without supporting authority, that the cell phone violation was not a proper basis for the stop because neither Officer Suing nor Officer Pulia testified to specific facts regarding Rodriguez's use of the cell phone while driving.

¶ 27    Officer Suing testified that he first saw Rodriguez driving through the intersection at 26th Street and Central Park while "he was utilizing a mobile telephone." Officer Suing could not recall

whether the phone was illuminated. He could not recall what Rodriguez was doing with the phone, but he saw Rodriguez was holding it in his left hand. In rebuttal, Officer Pulia testified that he observed a "cell phone violation." Officer Pulia testified that the cell phone was 4 inches, and Rodriguez was holding it in his left hand. Officer Pulia did not know if the cell phone was operational.

¶ 28    Section 9-76-230 of the Chicago Municipal Code (amended Oct. 28, 2015) provides that "no person shall drive a motor vehicle while using a mobile, cellular, analog wireless or digital telephone. 'Using a mobile, cellular, analog wireless or digital telephone' shall include, but not be limited to, the following activities: (1) talking or listening to another person on the telephone; (2) text messaging; (3) sending, reading or listening to an electronic message; or (4) browsing the internet via the mobile, cellular, analog wireless or digital telephone."

¶ 29    The testimony of both officers was that Rodriguez was driving while holding a cell phone in his left hand. Officer Suing testified that he observed Rodriguez using the cell phone. Officer Pulia testified that he observed Rodriguez committing a "cell phone violation." The officers' testimony was corroborated by the ticket issued to Rodriguez for a cell phone violation. Based on the officers' testimony and corroborating ticket, the trial court's finding that the officers had "reasonable, articulable suspicion" that Rodriguez was using the phone in violation of the Code was not clearly erroneous.

¶ 30    To be clear, whether Rodriguez was actually using the telephone in violation of the Code was not at issue at the hearing on the motion to quash arrest and suppress evidence. The officers' testimony that they observed Rodriguez holding the cell phone in his left hand and using the phone while driving provided an objectively reasonable basis for the officers to initiate a traffic stop.

8

Here, the two officers consistently testified as to their reasonable belief that Rodriguez was using the phone while driving, and this provided a basis for the traffic stop. "Reasonableness is the touchstone of the fourth amendment," *Lawrence*, 2018 IL App (1st) 161267, ¶ 44, and here we agree with the circuit court's finding the officers acted reasonably in stopping Rodriguez's vehicle.

¶ 31    Rodriguez next argues that the turn signal violation did not provide reasonable suspicion or probable cause for the officers to stop his vehicle because (1) the ticket issued to him did not corroborate the officers' testimony because it cited the wrong section of the Chicago Municipal Code, and (2) the officers' testimony showed that they initiated the traffic stop by activating their emergency lights before Rodriguez committed the turn signal violation.

¶ 32    As stated, Officers Suing and Pulia testified that they had reasonable suspicion that Rodriguez violated the Chicago Municipal Code's prohibition on cell phone use while driving, and this violation provided the officers with reasonable suspicion to stop Rodriguez's vehicle. However, even if the evidence showed that the officers lacked reasonable suspicion to stop Rodriguez's vehicle based on the cell phone violation, Officer Suing's testimony regarding his personal observation of the turn signal violation also provided reasonable suspicion and probable cause to stop the vehicle and detain Rodriguez. See *Lawrence*, 2018 IL App (1st) 161267, ¶ 40 (officers had probable cause to stop defendant's vehicle based on personal observation of a traffic violation).

¶ 33    Officer Suing testified he personally observed Rodriguez fail to use a turn signal as he turned off Central Park on to 25th Street. Rodriguez testified that he did not commit any traffic violations while driving. The trial court found the testimony of Officer Suing credible and found that Rodriguez was not credible. The trial court also found that Officer Suing's testimony was corroborated by the ticket issued to Rodriguez for failure to use his turn signal. Rodriguez argues

that the turn signal ticket does not corroborate Officer Suing's testimony because it cites the wrong section of the Chicago Municipal Code. The ticket cites a violation of section 9-16-010(b). Chicago Municipal Code § 9-16-010(b) (amended Dec. 11, 1991). This section of the Code does not mention the use of a turn signal. Despite this discrepancy, handwritten on the ticket is a notation indicating it was issued for "turn signal indicator, disobey." We agree with the trial court that this notation is corroborative of Officer Suing's testimony. The trial court was not required to find the insignificant error in citing the correct ordinance number on the ticket undermined Officer Suing's credibility especially where there was an accurate written notation of the nature of the offense written on the traffic ticket, consistent with the clear testimony of Officer Suing that Rodriguez committed a turn signal violation.

¶ 34 Rodriguez's argument that the turn signal violation cannot be a basis for the traffic stop because the officers testified to using their emergency lights before Rodriguez made the illegal turn onto 25th Street is not borne out by the evidence. Officer Suing testified that he did not activate the emergency lights right away after seeing Rodriguez's cell phone use because he was running the vehicle's plates. Once Officer Suing observed the turn signal violation, he was not sure how long it took him to turn on the squad car's lights, but when the lights were activated, Rodriguez's vehicle was on 25th Street. Officer Suing did not think he turned the lights on before Rodriguez made the turn onto 25th Street, but he was not sure. Officer Pulia did not testify regarding the turn signal violation or otherwise contradict Officer Suing's testimony on this issue. Officer Pulia stated that the emergency lights were turned on at 25th Street. Only Rodriguez testified to the contrary, that he saw the lights behind him while he was driving on Central Park. The ticket issued for the turn signal violation states that the infraction occurred at 2500 S. Central Park. The trial court credited the testimony of the officers over that of Rodriguez, and the officers' testimony was

10

corroborated by the ticket. Based on this evidence, the trial court's finding that the turn signal violation provided reasonable suspicion and probable cause for a traffic stop was not clearly erroneous.

¶ 35 We find that the trial court's determination that the officers had reasonable suspicion to stop Rodriguez's vehicle was not against the manifest weight of the evidence. Furthermore, because the officers testified that Officer Pulia observed a gun in the car and the gun was in plain view, Officer Suing therefore acted lawfully in recovering the gun. See *People v. Chandler*, 238 Ill. App. 3d 161, 165 (1992) (seizure of a gun found in plain view in defendant's vehicle was the result of a valid warrantless search of defendant's vehicle under the plain view doctrine). Therefore, we find the trial court did not err in denying Rodriguez's motion to quash arrest and suppress evidence.

¶ 36 B. The Evidence Was Sufficient to Support Rodriguez's Conviction

¶ 37 Rodriguez argues that the evidence is insufficient to support his conviction for unlawful use or possession of a weapon by a felon. Specifically, Rodriguez argues that the State failed to prove that he knowingly possessed a firearm beyond a reasonable doubt. Rodriguez does not dispute that he had a prior felony conviction.

¶ 38 "When reviewing a challenge to the sufficiency of the evidence, our function is not to retry the defendant." *People v. Eubanks*, 2019 IL 123525, ¶ 95. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 US. 307, 319 (1979)). It is the responsibility of the trier of fact to weigh evidence, draw inferences, and resolve conflicts in testimony, and a reviewing court will not substitute its judgment for that of the

trier of fact. *People v. Gray*, 2017 IL 120958, ¶ 35. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 39    To prove unlawful possession of a weapon by a felon, "the State must show that the defendant had a prior felony conviction and knowingly possessed a firearm." *People v. Adams*, 388 Ill. App. 3d 762, 766 (2009) (citing 720 ILCS 5/24-1.1(a) (West 2004)). Possession may be actual or constructive *Id.* "[C]onstructive possession of a firearm by a felon is established by showing that defendant had knowledge of the weapon and that he exerted immediate and exclusive control over the area where the weapon was found." *People v. Hammer*, 228 Ill. App. 3d 318, 323 (1992). "Evidence of constructive possession is often entirely circumstantial[,]" and knowledge may be shown by a defendant's "acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *People v. Davis*, 2017 IL App (1st) 142263, ¶ 39.

¶ 40    Here, the evidence established that Officers Suing and Pulia approached Rodriguez's vehicle after a traffic stop after seeing Rodriguez using a cell phone while driving and failing use a turn signal. Through the windshield, Officer Pulia saw the handle of a firearm sticking up between the driver's seat, where Rodriguez was sitting, and the center console area. Officer Pulia told Officer Suing, "gun, get him out." Both officers testified that they heard Rodriguez say "it's mine, it's mine," and "they keep trying to kill me" as Officer Suing removed the weapon from the vehicle. Officer Suing recovered a loaded .40 caliber Ruger handgun from the vehicle. Later, after Rodriguez was taken to the police station and after he had been read his *Miranda* rights, he spontaneously told Officers Suing and Pulia that he bought the gun for his protection. The trial court found the testimony of the officers was credible. See *People v. James*, 391 Ill. App. 3d 1045,

1052 (2009) (citing *People v. Hawkins*, 243 Ill. App. 3d 210 (1993) ("court making finding adverse to the defendant is implicit credibility finding in favor of the State"). The court also found that the officers' testimony was corroborated by the tickets and the gun. Rodriguez's statements claiming the gun was his, and the fact that the gun was clearly visible next to Rodriguez as the driver of the car, are sufficient evidence to show that Rodriguez was in constructive possession of the gun. The evidence, when viewed in a light most favorable to the State, was not so improbable or unsatisfactory to reverse Rodriguez's conviction for unlawful possession of a weapon by a felon.

¶ 41    Rodriguez argues that the evidence is not sufficient to establish that he knowingly possessed the firearm because (1) Montoya credibly testified that he was the owner of the gun, (2) Montoya's testimony corroborated Rodriguez's testimony that the gun was not his, and (3) the officers' testimony was inconsistent and their statements that Rodriguez admitted owning the gun were not credible.

¶ 42    Rodriguez argues that Montoya's testimony deserves substantial weight where he credibly testified under threat of arrest and prosecution that the gun was his, and his testimony was corroborated by Rodriguez's testimony. A fact finder's decision regarding what testimony to accept and the weight to be given that testimony is entitled to deference, but it is neither conclusive nor binding. *People v. Herman,* 407 Ill. App. 3d 688, 704 (2011) (citing *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007)). On review, we must "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *Id.* "Where findings of fact depend on the credibility of witnesses, a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence." *People v. Clark*, 2014 IL App (1st) 130222, ¶ 26.

¶ 43 We find the testimony of Montoya does not support a reasonable doubt of Rodriguez's guilt. Montoya offers an explanation that he owned the weapon and concealed it in the car before he returned it to defendant's wife. Montoya's testimony was implicitly found to lack credibility by the trial court where he could not remember when he had purportedly borrowed the vehicle, either at 10:00, 6:00 a.m., and 6:00 p.m., and where he claimed ownership of the gun but could not provide any details about where or when he purchased the gun. Notably, Montoya's testimony does not bear on the issue of constructive possession by Rodriguez. In fact, Montoya's testimony places the gun in the car near where the officers said they first observed it. Even if we accepted Montoya's testimony, which the trial court found not credible, he puts the recovered weapon in the car in the location observed by the police. Montoya could not credibly address Rodriguez's knowledge of its presence during the time he was driving the car. The issue of ownership of the weapon is irrelevant to the question of whether Rodriguez was in constructive possession of the weapon located between his seat and the center console at the time of the traffic stop.

¶ 44 Rodriguez argues that the trial court found Montoya credible because he was subsequently arrested based on his testimony of illegally possessing the weapon, and therefore his testimony justifies a reasonable doubt of Rodriguez's guilt. This argument is rejected. Montoya's ownership of the gun does not mean Rodriguez could not constructively possess the weapon. Based on his testimony, Montoya unlawfully possessed the gun at some time prior to Rodriguez's arrest. This testimony does not contradict the testimony from Officers Suing and Pulia that Rodriguez was unlawfully in constructive possession of a gun at 9:54 p.m. on December 6, 2016. Officer Pulia's testimony that he observed the gun sticking up between Rodriguez's seat and the center console and that Rodriguez stated the gun was his demonstrated that Rodriguez was in constructive possession of the gun at the time of his arrest. See *Hammer*, 228 Ill. App. 3d at 323.

¶ 45    Although Rodriguez testified that he did not own the gun, and this testimony was corroborated by Montoya's testimony that he owned the gun, there is no question that the gun was found in Rodriguez's constructive possession. No issue is raised regarding the fact that a gun was recovered from the car Rodriguez was driving for at least two hours or that the gun was immediately next to Rodriguez at the time of the traffic stop.  Rodriguez testified that he took the car from 2041 W. 52nd Street at 8:00 p.m. because he wanted to take his pregnant wife, who was experiencing some distress, to Norwegian American Hospital located at Division and Sacramento. He stopped at KFC for water because his wife was breathing heavily. He then drove "Western to 35th, 35th down to California, California down to 31st and 31st down to Central Park and [he] took Central Park down to 25th." He was stopped at 25th and Central Park at 9:54 p.m. Nearly two hours after his departure from 52nd Street, making one stop at KFC, Rodriguez testified that he was only halfway to his destination. In any event, for this two-hour drive, Rodriguez was in the immediate control of a weapon. In finding Rodriguez constructively possessed the gun the trial court found Rodriguez's denial of ownership of the gun and his denials of his admissions the gun was his were not credible.

¶ 46    Rodriguez advances several arguments that the officers' testimony was insufficient to prove the offense beyond a reasonable doubt based on minor issues with the officers' testimony. He questions the trial court's credibility determinations and argues the officers' testimony should be disregarded because, for example, they did not provide detail on the type of cell phone Rodriguez was using or whether he was using it at all. If this were a case of whether Rodriguez violated the prohibition against cell phone use (Chicago Municipal Code § 9-76-230), defendant might have a point. However, the charged offense dealt with the question of Rodriguez's constructive possession of a weapon and the failure of the officers to provide detail of the cell

phone usage has no relevance to the substantive gun charges. The officers' testimony about Rodriguez's cell phone violation was to establish a basis for the traffic stop, and Officer Suing's testimony regarding the turn signal violation, related to the issue of probable cause and these observations alone were sufficient to establish probable cause for the traffic stop. The two traffic tickets issued corroborate this testimony in support of probable cause for the traffic stop. Similarly, Officer Pulia's testimony that he could see a gun through the front windshield, between the drivers' seat and the center console, was not, as defendant contends, incredible simply because there was a pregnant person in the passengers' seat. There was no testimony that Officer Pulia's view of the driver's seat and center console area through the front windshield was obstructed by the passenger. Finally, we reject defendant's contention that, on its own, the officers' testimony that Rodriguez admitted that the gun was his is improbable, since it is part of our human experience that people can and do make incriminating statements to the police. These are all matters that relate to credibility determinations made by the trier of fact and defendant has made no compelling argument that would cause us to reverse the judgment of the circuit court.

¶ 47    Rodriguez also argues that Officer Suing's testimony was not credible because he testified that Rodriguez committed a turn signal violation, but the turn signal ticket cites to the wrong section of the Chicago Municipal Code. As discussed, we agree with the trial court that the turn signal ticket corroborated Officer Suing's testimony. The trial court was not required to find that the error in the citation to the Chicago Municipal Code on the ticket undermined Officer Suing's credibility especially where there was an accurate written notation of the nature of the violation on the traffic ticket consistent with the clear testimony of Officer Suing that Rodriguez committed a turn signal violation. "A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with

16

innocence and raise those explanations to a level of reasonable doubt." *Eubanks*, 2019 IL 123525, ¶ 95.

¶ 48    Rodriguez argues that his conviction should be reversed because the State's case can be reduced to the officers' testimony, which he argues is incredible. This argument is without merit. The trier of fact makes the credibility determination, not the defendant. This credibility finding is corroborated by the record: namely, the testimony of the two police officers, the two traffic tickets issued to Rodriguez corroborating the reason for the traffic stop and the gun found in the car in the immediate location of where he was sitting. Second, the positive and credible testimony of one witness is sufficient to support a conviction in Illinois. *People v. Smith*, 121 Ill. App. 2d 105, 109 (1970). Here, we have clear and convincing testimony from two police officers, found credible by the trial judge, that Rodriguez was in constructive possession of the weapon. The testimony of Rodriguez and Montoya, found incredible by the trial judge, does not justify a finding of reasonable doubt.

¶ 49    Both Officers Suing and Pulia testified that Officer Pulia observed and identified a gun in between Rodriguez's seat and the center console. Officer Suing testified that he recovered a loaded .40 caliber Ruger handgun in that location. This testimony was corroborated by the evidence of the gun itself. Both officers testified that Rodriguez twice admitted the gun was his: first, on the scene, and later, at the police station, after he had been read his *Miranda* rights. This testimony is sufficient to prove beyond a reasonable doubt that Rodriguez constructively possessed the gun. Again, defendant makes no credible argument that would defeat the trial court's decision to credit the testimony of the officers or discredit the testimony of Montoya and Rodriguez. The credibility findings of the circuit court were not against the manifest weight of the evidence.

¶ 50　We find the trial court did not err in resolving the conflict between the officers' testimony and Rodriguez's and Montoya's testimony in favor of the State. The trial court was in the best position to judge the credibility of all the witnesses based on his hearing their testimony and observing their demeanor. This court "will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48. The record reveals consistent, credible testimony regarding Rodriguez's constructive possession of the firearm from Officers Suing and Pulia and the uncontested evidence of Rodriguez's felony convictions. This evidence was sufficient for a rational trier of fact to find Rodriguez guilty of unlawful possession of a firearm by a felon.

¶ 51　　　　　　　C. Rodriguez's Claims of Plain Error Have No Merit

¶ 52　On appeal, Rodriguez argues that Officers Suing and Pulia improperly gave opinion testimony on the issue of whether or not Rodriguez was using a cell phone in violation of Illinois Rule of Evidence 701 (eff. Jan. 1, 2011). We note Rodriguez does not identify specific objectionable testimony from Officers Suing and Pulia. Rodriguez's failure to object to this testimony at trial or in a post-trial motion results in a forfeiture. *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 18. Rodriguez nonetheless asks that we consider his argument under the plain error doctrine. Prior to engaging in the plain error analysis, we first determine "whether error occurred at all before proceeding to consider whether either prong of the doctrine has been satisfied." *Id.* ¶ 21.

¶ 53　Here, we find the trial court did not err in allowing Officer Suing to testify that he observed Rodriguez "utilizing a mobile telephone" and Officer Pulia to testify that he observed Rodriguez commit a "cell phone violation." Illinois Rule of Evidence 701 provides that where

"the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge ***."

Thus, "as long as the opinion is based on the witness's personal observation, is one that a person is generally capable of making, and is helpful to a clear understanding of an issue at hand, it may be admitted." *People v. Richardson*, 2013 IL App (2d) 120119, ¶ 10.

¶ 54    The testimony of the officers was properly admitted because it was based on their personal observations. Officer Suing's testimony that Rodriguez was "utilizing a mobile telephone" was rationally based on his perception of Rodriguez holding the cell phone in his left hand and was helpful to advance the trial court's understanding of why the officers stopped Rodriguez's vehicle. Given the prevalence of cell phones in modern society and the general layperson's familiarity with how cell phones are used, Officer Suing's statement that he observed Rodriguez "utilizing a mobile telephone" was not based on scientific, technical, or other specialized knowledge. Similarly, Officer Pulia's testimony that he observed Rodriguez holding a cell phone in his left hand and committing a "cell phone violation" was based on his observations, helpful to understanding the basis of the traffic stop, and not based on specialized knowledge.

¶ 55    Rodriguez also objects to the prosecutor's closing argument that Montoya did not credibly testify to his ownership of the gun because Montoya did not mention "there is a Velcro that's kind of attached to the butt of the handgun, which we would submit to Your Honor that is unique." Rodriguez argues that this statement was improper because there was no testimony given as to whether a Velcro strap on a Ruger .40 caliber handgun would be unique.

¶ 56    Again, Rodriguez's failure to object to the prosecutor's argument at trial or raise this objection in a post-trial motion results in a forfeiture of this argument on appeal. *Brewer*, 2013 IL App (1st) 072821, ¶ 18. However, Rodriguez urges this court to review the prosecutor's statement under the plain error doctrine. Before conducting a plain error analysis, we first consider whether an error occurred. *Id.* ¶ 21.

¶ 57    "A prosecutor has wide latitude during closing argument." *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 62. "Closing arguments must be viewed in their entirety and the allegedly erroneous argument must be viewed contextually." *People v. Blue*, 189 Ill. 2d 99, 128 (2000). "Arguments and statements that are based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of closing argument." *Anaya*, 2017 IL App (1st) 150074 ¶ 62. In closing argument, counsel cannot "misstate the evidence or argue facts not in evidence," *People v. Green*, 2017 IL App (1st) 152513, ¶ 77, but counsel may assert facts that are inferable from the evidence. *People v. Custer*, 2020 IL App (4th) 180128, ¶ 40.

¶ 58    We find the prosecutor's argument that Montoya was not credible when he testified to ownership of the gun was not error because the prosecutor was merely asserting facts inferred from the evidence. The argument given by the prosecutor was as follows.

> "Your Honor, one thing I would note is that I specifically asked Mr. Montoya were there any kind of unique identifying marks on this firearm, this .40 caliber semi-automatic, and he mentioned a rubber grip and that was it. But if Your Honor takes a closer look at what has been admitted as People's Exhibit No. 4[1], there is a Velcro that's kind of attached to the butt of the handgun, which we would submit to Your

---

[1] Although the gun was entered into evidence, no photo of the gun appears in the record on appeal.

Honor that is unique. Now that goes in support that this was this defendant's firearm as opposed to Mr. Montoya's."

¶ 59    Montoya gave the following testimony at trial.

[STATE'S ATTORNEY]: Do you know was there anything on that gun that -- Anything unusual on that gun or any markings that you had put on that gun?

[MICHAEL MONTOYA]: It was a blue steel and like a rubber grip.

Q. And a rubber grip?

A. The grip was rubber and (inaudible).

Q. And was there anything else that was on that gun, Mr. Montoya, that --

A. Not that I know of, that I remember.

The facts in evidence showed that Montoya did not mention a Velcro attachment to the gun at any time. Montoya was asked first whether there was anything "unusual" on the gun, to which he responded that the gun was "a blue steel" and had "like a rubber grip." Montoya was then asked if there was "anything else on that gun," and he responded there was nothing that he knew of. It is reasonable to infer that Montoya would have identified the Velcro as a "unique" marking on the gun when asked if he was the owner of the gun. The State was not required to prove at trial that Velcro does not come standard on .40 caliber Ruger handguns in order to argue the inference that a Velcro *attachment* to a gun would be a unique identifying mark worth mentioning. The prosecutor did not err in arguing that Montoya's failure to identify the Velcro when asked negatively impacted his credibility. We again note, the issue is whether defendant constructively possessed a weapon at the time of the traffic stop. Whether Montoya testified accurately to a description of the gun does nothing to diminish the officers' testimony regarding Rodriguez's constructive possession of the weapon at the time of the traffic stop.

¶ 60    Because we find that the officers' testimony was properly admitted and the prosecutor's closing argument was not error, we will not review Rodriguez's claim of plain error.

¶ 61                                III. CONCLUSION

¶ 62    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 63    Affirmed.